IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER HUGH LUCAS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:20-cv-00097 (MTT) (CHW) |
| | : | |
| GEORGIA DEPARTMENT OF | : | |
| CORRECTIONS, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATION

Before the Court is a motion for summary judgment filed by the Defendants. (Doc. 47). For the reasons discussed below, no reasonable jury could find an Eighth Amendment violation on the present record. Nor could any jury find that the Defendants engaged in intentional discrimination or acted out of bad faith, thereby warranting a damages award under Section 504 of the Rehabilitation Act. Accordingly, it is **RECOMMENDED** that the Defendants' motion for summary judgment be **GRANTED**. It is further **ORDERED**, for reasons explained below, that Plaintiff's motions to compel (Docs. 44, 46) are **DENIED**.

## FACTS

Plaintiff Christopher Hugh Lucas is a Georgia prisoner who is wheelchair-bound due to bilateral knee degeneration and suffers from basal joint arthritis (BJA) in both thumbs. For purposes of summary judgment, Plaintiff's BJA arose from his having to hand-power his prior, manual wheelchair within several prison facilities, including Johnson State Prison. In particular, Plaintiff complains of three ramps "built into the westside perimeter sidewalk of Johnson State Prison [that] are much greater than the maximum 1:20 grade" contemplated by ADA regulations.

1

(Doc. 44, p. 1). The Defendants have not contested Plaintiff's assertion regarding the ADA grade requirements, and Plaintiff's assertion is accepted for purposes of summary judgment.[1]

Plaintiff claims that he became disabled as early as May 1987 (Doc. 1, p. 7), but the events most relevant to this lawsuit occurred after January 2015, when Plaintiff first arrived at Johnson State Prison, where he remains housed (Doc. 47-3, p. 7). Plaintiff had earlier received a manual wheelchair in July 2013, while housed at Autry State Prison. (Doc. 47-3, p. 8).

In October 2015, while housed at Johnson State Prison, Plaintiff was formally diagnosed with basal joint arthritis or BJA by an orthopedist. (Doc. 47-3, p. 10). Plaintiff's initial treatment for this impairment consisted of wearing thumb splints and receiving injections to alleviate his pain. (Doc. 47-3, p. 11). The thumb splints served to render immobile Plaintiff's thumbs, which otherwise would have "[tried] to go behind the backside of my hands." (Doc. 47-3, p. 12). According to Plaintiff, the orthopedist credited Plaintiff's "propelling [his] wheelchair" as the cause of his BJA. (Doc. 47-3, p. 11). The orthopedist suggested that Plaintiff limit his use of the manual wheelchair and "get somebody to push you, if you can," in order to reduce the wear on his thumb joints. (Doc. 47-3, p. 12). The orthopedist also provided Plaintiff with hand grips to aid Plaintiff in operating his wheelchair. (Doc. 47-3, p. 12).

The record presents little information regarding Plaintiff's treatment during 2016 and much of 2017. Plaintiff received new thumb splints after wearing out earlier sets. (Doc. 47-3, p. 11). The record also shows some hesitation on Plaintiff's part in requesting additional pain injections due to a concern over cartilage deterioration:

> [O]nly thing that they could do was give me injections for the relief of pain, but they always warned me … my orthopedist on the street and the other orthopedists,

---

[1] *See, e.g., Hubbard v. 7-Eleven, Inc.*, 433 F.Supp.2d 1134, 1146 (S.D. Cal. 2006); *Parr v. L&L Drive–Inn Restaurant*, 96 F.Supp.2d 1065, 1087 (D. Haw. 2000).

each time you get an injection, the needle damages the cartilage. So, you know, they're giving you some relief, but they're creating other problems. So therefore, I was — I would do the best I could to refrain from trying to see an orthopedist.

(Doc. 47-3, p. 15)

In November 2017, Plaintiff claims that he saw Dr. Kenneth Cowens, a prison physician, for two "chronic care" appointments. (Doc. 47-3, p. 13). During these appointments, Plaintiff, in his own words, "decided that they wasn't going to go by what the orthopedist said, so that's when I started doing more documentation." (Doc. 47-3, p. 11). By this, Plaintiff means that he formally requested measures to reduce his use of a manual wheelchair, specifically that he asked for: "(1) short distance profile, (2) wheelchair pusher, or (3) issue me an electric wheelchair." (Doc. 1, p. 9). Plaintiff does not explain what a "short distance profile" means, but Plaintiff argues that he needed to "propel my [wheelchair] an average of 12.2 miles per week," a distance "later reduced to an average of 8-9 miles per week." (Doc. 1, p. 12). Regarding Plaintiff's requests for a designated wheelchair pusher or the procurement of an electric wheelchair, the record indicates that Dr. Cowens denied Plaintiff's requests.

Plaintiff claims that he made similar requests of Defendants Nurse Susan Oliver, Nurse Pamela Lindsey, and Nurse Mitzi Hall in June and October of 2018. (Doc. 1, pp. 16–18). *See also* (Doc. 47-5, pp. 17, 20). In the interim, Plaintiff was referred for another orthopedic consultation based upon his persistent thumb pain. (Doc. 47-5, pp. 17–19). At that second consultation in August 2018, Plaintiff claims the treating orthopedist prescribed Rib-Grips for Plaintiff's wheelchair. (Doc. 47-3, p. 16). *See also* (Doc. 47-5, p. 20). Plaintiff contends that he "never saw any RibGrips and [there] never were any installed on my wheelchair." (Doc. 47-3, p. 16). The Defendants contend that Rib-Grips were, at the least, ordered. (Doc. 47-5, p. 21). *See also* (Cowen Aff., Doc. 47-4, ¶ 20) ("Ribgrips were ordered for Inmate Lucas's wheelchair").

Thereafter, beginning in August 2018, and continuing into early 2019, Plaintiff claims that he treated with a hand specialist who formally recommended that Plaintiff be provided with an electric wheelchair. (Doc. 47-3, p. 18) ("I was seen by him three different times"). Plaintiff again treated with Dr. Cowens and with several of the nurse defendants during this period, (Doc. 1, p. 9), but Plaintiff did not receive an electric wheelchair until July 2019. (Doc. 47-3, p. 17). In Plaintiff's words, the provision of this wheelchair was "a big, big blessing … It was just a little late." (Doc. 47-3, p. 17). Or put differently, the electric wheelchair came "about forty-five (45) months after I was first diagnosed and treated (10-22-2015) for basal joint arthritis." (Doc. 1, p. 23).

As relief in this action, Plaintiff seeks monetary damages for pain and suffering. (Doc. 1, pp. 33–36). In the body of his complaint, Plaintiff also references injunctive relief, but Plaintiff has failed to describe what form that injunctive relief might take, and the provision of an electric wheelchair has now accommodated Plaintiff's BJA such that any award of injunctive relief would, at this juncture, be moot.[2] *See* (Defs.' Mot. Summ J., Doc. 47-1, pp. 17–18). Accordingly, damages are the only remaining remedy to which Plaintiff is potentially entitled in this action.

Regarding the issue of damages, different legal analyses apply to Plaintiff's Eighth Amendment claims on the one hand and Plaintiff's ADA and RA claims on the other. Because of sovereign immunity, Plaintiff cannot recover under the ADA, however, without also showing an Eighth Amendment violation. *See Redding v. Georgia*, 557 F. App'x 840, 844 (11th Cir. 2014) (citing *United States v. Georgia*, 546 U.S. 151 (2006)) ("Title II of the ADA validly abrogates state sovereign immunity to the extent that it creates a cause of action for damages against states

---

[2] *See also* (Pl.'s Dep., Doc. 47-3, p. 17) ("the issue was to remove the cause or to remove from me the cause, and an electric wheelchair [or] a pusher would have been a means of removing the cause instead of relocating me to another prison").

4

for conduct that violates the Fourteenth Amendment"). As discussed below, because Plaintiff's Eighth Amendment claims fail, his ADA claims also necessarily fail.

## MOTIONS TO COMPEL

In two pending motions to compel discovery (Docs. 44, 46), Plaintiff seeks to obtain information concerning whether the ADA and RA govern Georgia prisons, whether any associated regulations set a slope or grade cap for prison ramps, and whether three ramps at Johnson State Prison in fact exceed that cap. By their plain text, the ADA and RA clearly do govern Georgia prisons.[3] As discussed above, for purposes of the present motion Defendants do not contest Plaintiff's assertions that the ADA and RA, or associated regulations, set a 1:20 grade cap and that three ramps at Johnson State Prison fail to comply with those regulations. There is, therefore, no cause at present for the ramps at Johnson State Prison to be "shot with a transit [to] either confirm or deny [Plaintiff's] assertion that all three inclines violate the ADA standards." (Doc. 44, pp. 2–3). Nor need the Court determine whether, given Plaintiff's status as a disabled, *in forma pauperis* prisoner, the Court should take the unusual step of facilitating discovery on Plaintiff's behalf. *See, e.g.*, *Easley v. Dep't of Corrs.*, 590 F. App'x 860, 868 (11th Cir. 2014) ("Neither defendants nor the district court were obligated to advance Easley his discovery costs"). Rather, for the reasons discussed below, the record indicates that even if Plaintiff's discovery requests all returned answers favorable to Plaintiff, the Defendants would nonetheless be entitled to summary judgment. For that reason, Plaintiff's motions to compel are **DENIED**.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper

---

[3] The parties have not briefed the difficult issue of whether that statutory reach is constitutionally permissible. *See Penn. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 212 (1998) (declining to reach the issue of whether the ADA "is a constitutional exercise of Congress's power under either the Commerce Clause … or § 5 of the Fourteenth Amendment").

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

## ANALYSIS

The Defendants move for summary judgment on four grounds. Regarding Plaintiff's Eighth Amendment claims of deliberate indifference, the Defendants claim qualified immunity and argue that Plaintiff cannot show a constitutional violation on the merits. Regarding Plaintiff's ADA and RA claims, the Defendants invoke state sovereign immunity and argue that Plaintiff cannot show any statutory violation.

As discussed below, Plaintiff cannot make out an Eighth Amendment claim on the merits, sovereign immunity bars Plaintiff's ADA claims, and Plaintiff cannot recover damages under the RA because Plaintiff has not demonstrated intentional discrimination or bad faith by the Defendants. Accordingly, it is recommended that the Court grant the Defendants' motion for summary judgment.

**(1)** **Plaintiff's Eighth Amendment Claims**

The Eighth Amendment's cruel and unusual punishments clause "imposes duties on [prison] officials, who must provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment does not, however, mandate comfortable prisons. *Id.* A prison official's actions violate the constitution only when (i) a prisoner is exposed to a

substantial risk of serious harm, and (ii) a prison official's deliberate indifference to that risk causes harm. *Mosley v. Zachery*, 966 F.3d 1265, 1270 (11th Cir. 2020).

Although Plaintiff does not clearly distinguish between the Eighth Amendment harms that he alleges on the one hand, and the discriminatory harms that he asserts under ADA and RA on the other, the nature of Plaintiff's Eighth Amendment claim is apparent from the record. Starting from the premise that Plaintiff is wheelchair-bound due to knee degeneration, Plaintiff cites his basal joint arthritis or BJA as a serious medical need. The risks flowing from that medical need stem, in turn, from Plaintiff's continued use of a manual wheelchair from October 2015, when Plaintiff first received a BJA diagnosis, until July 2019, when Plaintiff finally received an electric wheelchair. (Doc. 1, p. 23).

Plaintiff further argues that he had little choice but to use the manual wheelchair available to him, as that was his only method for maneuvering around Johnson State Prison, including to receive meals. *See* (Doc. 47-3, p. 12) ("[T]o go to chow or whatever, you have no choice in the matter. And you have to get somebody to push you, if you can; but in this environment, no one does anything without some sort of payment"). Plaintiff claims that his continued use of a manual wheelchair during this period resulted in unnecessary pain, and that it threatened to cause lasting physical damage to the structure of Plaintiff's hands. (Doc. 47-3, pp. 14–15) ("[M]y thumbs are tending to grow to the backside of my hands. And once they get wherever they choose to go … they will freeze in place and never move again"). For summary judgment purposes, the Defendants concede that Plaintiff's condition amounted to serious medical need.

The Defendants nevertheless seek summary judgment on the deliberate indifference prong of the Eighth Amendment inquiry, and the record supports the Defendants' argument. To survive summary judgment on that prong, Plaintiff must present evidence suggesting both that the

Defendants failed to respond in a reasonable manner and that the Defendants acted with a subjectively culpable state of mind. As a matter of law, the record fails to support Plaintiff on both prongs of the deliberate indifference analysis.

Regarding the reasonableness of the Defendants' actions, Plaintiff acknowledges and the undisputed record shows that Plaintiff received regular care for his BJA and other symptoms during the entirety of the period under consideration. The record shows no formal medical recommendation for the provision of an electric wheelchair until March 2019, when Plaintiff received follow-up treatment from Dr. Alain Czaykowsky, a hand specialist. (Doc. 47-5, p. 23) ("I would think the best way to help him at this point … is to change his manual wheelchair to an electric one"). Prior to this date, the Defendants' treatments included the regular provision of medications, *see* (Doc. 47-5, p. 11) ("continue current meds"), most of them relating to chest pain or high blood pressure, *see* (Doc. 47-5, p. 24); periodic referrals to orthopedic specialists for examination studies (Doc 47-5, p. 10) and for Synvisc or Kenalog injections (Doc. 47-5, pp. 9, 17); and the provision of thumb splints, a wheelchair cushion (Doc. 47-5, p. 14), and thermal gloves. (Doc. 47-3, p. 17). Furthermore, after March 2019, the record shows that the Defendants continued to provide care, including by arranging for Plaintiff to be measured for an electric wheelchair (Doc. 47-5, p. 24) and by providing Plaintiff with an eggcrate mattress (Doc. 47-5, p. 25). The record shows, as a matter of law, that the Defendants took reasonable steps to accommodate Plaintiff's BJA and accompanying symptoms. *See Farmer v. Brennan*, 511 U.S. 825, 845 (1994) ("prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause").

The Court's deliberate indifference inquiry is not limited to a mere objective analysis, however. Regarding the Defendants' subjective state of mind, Plaintiff has at most shown that he

desired alternative forms of treatment or that different medical professionals might have disagreed with the Defendants' course of treatment, preferring instead to have prescribed an electric wheelchair at an earlier date. This showing by Plaintiff is insufficient because "[a] plaintiff cannot establish deliberate indifference simply by second guessing the conclusions reached by a prison medical official in the exercise of his medical judgment." *Bismark v. Fisher*, 213 F. App'x 892, 896 (11th Cir. 2007). That is, even if the Defendants had provided deficient care, there is no indication in the present record that any deficiency resulted from a reckless disregard for Plaintiff's condition, as opposed to a good faith effort to provide appropriate care. *See, e.g.*, *Hoffer v. Sec'y, Fla. Dep't of Corrs.*, 973 F.3d 1263, 1272 (11th Cir. 2020) ("where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"). Accordingly, the Defendants are entitled to summary judgment on the merits of Plaintiff's Eighth Amendment claim of deliberate indifference.

Finally, even if Plaintiff could show deliberate indifference by the Defendants, caselaw does not indicate, to a sufficient degree of specificity, that the Defendants' conduct violated any clearly established right. *Cf. Brown v. Thompson*, 868 F.Supp.326, 330 (S.D. Ga. 1994) (finding no "sufficient factual precedent for the Court to hold that [the] temporary denial of wheelchair use is so clearly established a violation of the Eighth Amendment that every 'like-situated, reasonable government agent' would know it"). For that reason, and in the alternative, the Defendants are entitled to summary judgment on grounds of qualified immunity from Plaintiff's claims of deliberate indifference.

**(2)     Plaintiff's ADA and RA Claims**

In addition to his Eighth Amendment claims of deliberate indifference to a serious medical need, Plaintiff also advances claims of statutory violations under the ADA and RA. Plaintiff has not clearly delineated the statutory harms that he alleges under these authorities, but the nature of Plaintiff's argument is apparent from the record. In short, Plaintiff alleges that the provision of a manual wheelchair was not a reasonable accommodation given his BJA, particularly in light of ramps within Johnson State Prison that exceed a 1:20 grade or slope cap. The Defendants oppose Plaintiff's ADA and RA claims both on the merits and on the basis of state sovereign immunity.

Sovereign immunity is a barrier to recovery under the ADA. In cases involving acts of state officials, the ADA authorizes suit only against a "public entity," 42 U.S.C. § 12131(1), meaning that Plaintiff's request for damages takes the form of an official capacity claim.[4] The ADA does not, however, abrogate state sovereign immunity for conduct that does not also violate the constitution. *See Redding v. Georgia*, 557 F. App'x 840, 844 (11th Cir. 2014). Because, for the reasons discussed above, Plaintiff's Eight Amendment claims fail on the merits, state sovereign immunity necessarily bars Plaintiff's ADA claims.

The same cannot be said for Plaintiff's claims under the RA, for reasons elsewhere explained by this Court. *See Grayson v. Ivey*, 2020 WL 4201194 at *4 (M.D. Ga. July 22, 2020) (citing 42 U.S.C. § 2000d-7(a)(1)). Because the Defendants have failed to address the issue of waiver of state sovereign immunity upon acceptance of federal funding, they have not shown that state sovereign immunity is a barrier to Plaintiff's recovery under Section 504 of the RA.

Nevertheless, the Defendants are entitled to summary judgment on Plaintiff's RA claim because Plaintiff has not presented evidence of bad faith or intentional discrimination, required to

---

[4] The RA similarly authorizes suit, in relevant part, only against an "entity of such State or local government that distributes such [federal] assistance." 29 U.S.C. §794(b)(1)(B).

secure an award of compensatory damages.[5] *See Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th Cir. 2005). As discussed above in relation to Plaintiff's Eighth Amendment claims, the record shows that Plaintiff received a BJA diagnosis but that the Defendants took reasonable steps to accommodate Plaintiff's BJA, including by ordering and replacing thumb stents and grip gloves, by arranging for repeated examinations with specialist physicians, and by arranging for Plaintiff to receive periodic analgesic injections upon request.

Plaintiff claims that after a hand specialist made a formal recommendation for an electric wheelchair in March 2019, Plaintiff did not receive an electric wheelchair for another four months, until July 2019. Defendants contend this delay was due, at least in part, to logistics related to "ordering such a unique and expensive item." (Defs.' Statement of Facts, Doc. 47-2, p. 7, ¶ 46). In the interim, however, there is no indication that Plaintiff was actually excluded from any meals or prison activities. Rather, the record suggests only that Plaintiff continued to suffer from discomfort when manually powering his wheelchair to access these amenities. The record also shows that during this period the Defendants were actively taking steps to provide Plaintiff with an electric wheelchair, taking Plaintiff's measurements in April or May of 2019, so as to procure an appropriately sized wheelchair. *See* (Doc. 47-3, p. 19).

Given this undisputed record showing (a) that Plaintiff received regular medical care for his BJA diagnosis throughout the period under consideration and (b) that the Defendants made good faith efforts to procure an electric wheelchair for Plaintiff after the March 2019 recommendation by a treating hand specialist, Plaintiff cannot recover damages under the RA. *Badillo*, 158 F. App'x at 214 ("good faith attempts to pursue legitimate ends are not sufficient to

---

[5] Implicit in the Defendants' summary judgment argument is the legal point that a nominal damages award would be inappropriate for a mere violation of the RA without any accompanying constitutional violation. *See, e.g.*, *Walker v. Anderson Elec. Connectors*, 944 F.2d 841, 845 (11th Cir. 1991) ("Nothing in *Carey* mandates the award of nominal damages for statutory violations").

support an award of compensatory damages under the RA") (brackets omitted). Accordingly, regarding both Plaintiff's ADA claims and his RA claims, it is recommended that the Court award summary judgment to the Defendants.

## CONCLUSION

For the reasons discussed herein, it is **RECOMMENDED** that the Defendants' motion for summary judgment (Doc. 47) be **GRANTED**, and it is further **ORDERED** that Plaintiff's motions to compel (Docs. 44, 46) are **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 9th day of December, 2021.

                                                    s/ Charles H. Weigle
                                                  Charles H. Weigle
                                                  United States Magistrate Judge